COLUMBIA METAL CULVERT
COMPANY, INC., Appellant,

v.

KAISER INDUSTRIES
CORPORATION et al.

No. 75–1362.

United States Court of Appeals,
Third Circuit.

Argued Sept. 19, 1975.

Decided Nov. 3, 1975.

Henry T. Reath, Duane, Morris & Heckscher, Philadelphia, Pa., for appellant.

Jeanne Ward Ryan, C. Clark Hodgson, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for appellee Robert A. Kennedy.

Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge

The reach of Pennsylvania's "long-arm" statute has been expanded by successive amendments since 1968.[1] The last amendment in 1972, 42 P.S. § 8309(b) (Supp.1975), enlarged jurisdiction over foreign corporations to the broadest extent permissible under the United States Constitution. The case before us requires an interpretation of the law in its present form as it pertains to personal jurisdiction over non-resident *individuals*.[2]

Columbia Metal Culvert Company, Inc., ("Columbia"), a New Jersey corporation, instituted an antitrust suit in the United States District Court for the Eastern District of Pennsylvania[3] against Kaiser Industries Corporation,[4] a Nevada corporation, and several of its affiliated corporations (collectively referred to as "Kaiser"), Kennedy Culvert and Supply Company ("Kennedy Company"), a New Jersey corporation, and Robert A. Kennedy individually, a New Jersey resident.

Columbia alleged in its complaint that Kaiser conspired with Kennedy "to leave Columbia's employ, without notice, and to begin immediately thereafter, selling, in competition with Columbia, Kaiser Aluminum's products." Columbia asserted that Kennedy was transacting business in Pennsylvania and invoked Pennsylvania long-arm jurisdiction over Kennedy pursuant to Fed.R.Civ.P. 4(d)(7)[5] and 42 P.S. § 8301 et seq. (Supp.1975). Substituted service was made by mail on the Secretary of the Commonwealth of Pennsylvania pursuant to 42 P.S. §§ 8304 and 8307 (Supp.1975).

Kennedy moved to dismiss the action for lack of jurisdiction and for lack of venue. The district court dismissed the action against Kennedy for lack of jurisdiction, concluding that there were insufficient activities by him within Pennsylvania to meet the requirements of the long-arm statute. Columbia timely filed a motion for reconsideration alleging that facts revealed in Kennedy's deposition in discovery proceedings, the transcript of which had become available only after the district court's order dismissing the action against Kennedy, established jurisdiction. The court denied the motion. Columbia appeals from both that order and the prior order of dismiss-

1. The evolution of the statute is traced in *Gorso v. Bell Equipment Corp.*, 476 F.2d 1216, 1218–20 (3d Cir. 1973).

2. In *Stepnowski v. Avery*, 340 A.2d 465, 468 (Pa.Super.1975), the court recognized the existence of a double standard and advised caution in applying to individuals the Pennsylvania cases construing the new long-arm statute for corporations.

3. Jurisdiction was based on the Clayton Act §§ 4 & 16, 15 U.S.C. §§ 15 & 26, and 28 U.S.C. § 1337.

4. By stipulation of counsel, Kaiser Industries Corporation was dropped as a party defendant

on July 30, 1972, and Kaiser Aluminum and Chemical Sales Inc., a wholly owned subsidiary of Kaiser Aluminum and Chemical Corporation, was added as a party defendant.

5. Fed.R.Civ.P. 4(d)(7) provides for service of summons and complaint:

. . . in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.

al.[6] We reverse the district court's judgment in favor of Kennedy.

Although the district court did not discuss venue in its memorandum decision dismissing Kennedy for lack of jurisdiction, Columbia raised the matter of venue on appeal. We believe that it is for the district court in the first instance to determine the propriety of venue in the Eastern District of Pennsylvania and thus do not reach this issue here.

## I.

In our search to ascertain whether the district court acquired jurisdiction over Kennedy, we must determine whether service was effectively made under Pennsylvania's most recent amendment to its long-arm statute, 42 P.S. § 8304 (Supp.1975). That statute permits substituted service on any nonresident individual who was doing business in Pennsylvania on or after August 30, 1970, "at the time the cause of action accrued or the harm or financial loss occurred." 42 P.S. § 8304 (Supp.1975). The pertinent provisions of 42 P.S. § 8309 (Supp.1975) define "doing business" as follows:

(a) Any of the following shall constitute "doing business" for the purposes of this chapter:

(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.

The record reveals that Kennedy resigned from Columbia on March 23, 1973. Several months before his separation from Columbia, in late 1972, Kennedy in New Jersey telephoned Phil Buchy, Kaiser's district manager in Pennsylvania, and attended a meeting in Pennsylvania with Buchy and Van Newhyzen, Kaiser's credit manager, to explore the possibility of Kennedy's becoming a distributor for Kaiser. The conclusion of all participants in the meeting was that, in view of the transportation costs from Kaiser's plant in Baltimore, Maryland, it was not feasible for Kennedy to act as a distributor in Pennsylvania and New Jersey.

In January 1973 Kennedy was again in touch with Buchy in Pennsylvania by telephone to discuss possible employment with Kaiser and to arrange a meeting in New Jersey in early February. There Kennedy learned that Kaiser was opening a plant in New Castle, Delaware, and that the reduced transportation costs would allow him to be competitive as a distributor of Kaiser products in Pennsylvania and New Jersey. In late February, Kennedy made another telephone call to Buchy in Pennsylvania to set up a second meeting in New Jersey, which meeting he followed up during late February and early March by one or two telephone calls to Buchy, again in Pennsylvania.

During the first week in March, Kennedy met once more with Kaiser representatives in Pennsylvania and tentatively agreed to become a distributor. They also discussed territorial allocation, and Kennedy stated he was "interested in southern New Jersey and eastern Pennsylvania." Subsequently, Kennedy discussed credit arrangements on the telephone with Buchy in Pennsylvania, and on March 23, he telephoned Buchy in

---

**6.** Upon petition by Columbia, the district court entered judgment in favor of Kennedy pursuant to Fed.R.Civ.P. 54(b). Although the court did not specify the reasons underlying its Rule 54(b) certification as required by this court in *Allis-Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360 (3d Cir. 1975), we decline to give retroactive application to that decision.

Pennsylvania to tell him that he had resigned from Columbia. The written distributorship agreement between Kaiser and Kennedy Company, identified as a New Jersey corporation, was signed in Pennsylvania on March 28, 1973. Kennedy signed his name under the legend "Distributor Kennedy Culvert and Supply Co., Inc." Kennedy Company, however was not then in existence, not having been organized until April 6, 1973. Kennedy became its president and acquired a 90% capital stock interest. In Appendix C to the distributorship agreement, the territory is designated as central and southern New Jersey and eastern Pennsylvania, and the agreement itself binds the distributor to "concentrate his sales efforts therein and  . . . at all times maintain an organization sufficient to promote efficiently  . . the sale of Products in said territory."

Even before the distributorship agreement was signed, Kennedy telephoned the Petroni Construction Company in Pennsylvania on March 27 to solicit business. He again telephoned Petroni on April 5 and made a bid which was accepted. Kennedy immediately ordered the materials from Kaiser to be shipped to Petroni's construction site in Hatboro, Pennsylvania, by April 11. Kennedy Culvert and Supply Co. was listed as the purchasing party on the quotation, the purchase order, and the acknowledgment, although the sale was consummated one day before the company was incorporated.

## II.

The above activities constitute the sum of Kennedy's contacts with Pennsylvania as an individual. Before we consider which activities fall within the ambit of Pennsylvania's long-arm statute, we take up two contentions of Kennedy regarding the period of time we should consider and his relationship to Kennedy Company before its incorporation.

Columbia's complaint and written interrogatories span a time period longer than the two weeks from March 23, 1973, when Kennedy resigned from Columbia, to April 6, 1973, when Kennedy organized Kennedy Company. However, Kennedy, in the preface to his answers to the interrogatories, limited the period in question to those two weeks, allegedly by agreement of counsel. Columbia has not acquiesced in this limitation as evidenced by its memorandum opposing Kennedy's motion to dismiss and its argument in this court. Counsel for Kennedy informed this court that the alleged agreement between counsel was not in writing. As there is a dispute about the making of such an agreement, absent any writing evidencing the agreement, we will not be bound to the two-week time frame although the district court confined its analysis to that period.

■ Kennedy contends that his contacts with Pennsylvania were all on behalf of Kennedy Company, even though it was not incorporated until April 6, 1973. As previously noted, the distributorship agreement was signed by Kennedy on behalf of the nonexistent corporation. Because Kennedy was purporting to act as agent for a principal which both he and Kaiser knew to be then nonexistent,[7] he personally became liable on the contract; he must be considered the real party to the contract, since Kennedy Company was only a nominal party. Restatement (Second) of Agency § 326 (1958).[8]

Further, Kennedy made a sale to Petroni Construction Company the day before Kennedy Company was formed. He points out that the shipment to Petroni's site was scheduled for April 11, five days after the incorporation of the company,

---

**7.** We assume Kaiser was aware that Kennedy Culvert was not yet incorporated as the agreement was signed just three working days after Kennedy resigned from his position with Columbia.

**8.** *See O'Rorke v. Geary*, 207 Pa. 240, 56 A. 541 (1903) (defendant signed his name "for a bridge company to be organized and incorporated" and was held personally liable).

but we believe the crucial date is that on which the contract of sale was executed.

We conclude that Kennedy cannot use a nonexistent corporation as principal to avoid individual responsibility for his activities in Pennsylvania prior to April 6.

### III.

The district court reasoned that a "systematic course of conduct" is required under Section 8309(a)(1) and (2) just as under the identical language in former 15 P.S. § 2011(C). *Rosen v. Solomon*, 374 F.Supp. 915, 918 (E.D.Pa.1974); *AAMCO Automatic Transmissions, Inc. v. Tayloe*, 368 F.Supp. 1283, 1293 (E.D. Pa.1973).[9] The district court found that Kennedy's activities were too isolated and irregular to be "systematic." It further rejected Columbia's contention that Kennedy was doing business under 42 P.S. § 8309(a)(3) because "there is no evidence that Kennedy shipped merchandise, either directly or indirectly, through the Commonwealth . . . ."

Our examination of Kennedy's contacts with Pennsylvania reveals that the bulk of his telephone calls into Pennsylvania and the meetings held there were directed only toward obtaining a Kaiser distributorship.[10] The signing of the distributorship agreement was similarly an isolated event and not merely one of a contemplated series of such acts. The execution of the contract itself in Pennsylvania might have sufficed to link Kennedy to Pennsylvania if the Legislature had manifested an intention to extend jurisdiction over non-resident *individuals,* as well as corporations, to the

limits of due process.[11] *See McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). However, under the more restrictive language of section 8309(a), execution of the contract alone will not allow assertion of jurisdiction over the distributor.

■ We believe, however, that the solicitation of business from and sale to Petroni Construction Company does satisfy the jurisdictional prerequisites of section 8309(a)(2). Mere solicitation of business has been held sufficient under similar language in a predecessor statute. *Rufo v. Bastian-Blessing Co.*, 405 Pa. 12, 173 A.2d 123, 128 (1961). Here Kennedy not only solicited business but also effected a sale within the Commonwealth. Although addressing itself to a tortious claim, this court has indicated that a quantum of activity itself insufficient to satisfy the long-arm statute might be sufficient if coupled with an in-state sale. *Gorso, supra,* 476 F.2d at 1223 n.5.

The Petroni transaction meets the requirement of section 8309(a)(2) that a series of similar acts be contemplated because Kennedy had undertaken an obligation under his distributorship contract to solicit business and promote sales of Kaiser products in Pennsylvania. That Kennedy Company was subsequently formed and that it, not Kennedy individually, made the later bids and sales in Pennsylvania does not negate Kennedy's intent or his contractual commitment. His activities demonstrate that he was not constrained by the formalities of doing business in the corporate form.

---

**9.** *See Gorso v. Bell Equipment Corp.*, 476 F.2d 1216, 1223 n.6 (3d Cir. 1973). The Pennsylvania Supreme Court set forth the requirement of systematic activity under an even earlier version of the long-arm statute. *Myers v. Mooney Aircraft Inc.*, 429 Pa. 177, 240 A.2d 505, 510 (1967).

**10.** In *Tudesco v. Publishers Co.*, 232 F.Supp. 638 (E.D.Pa.1964), the president of a foreign corporation met with a Pennsylvania resident in Philadelphia, entered into an oral contract with him as a result of the meeting, and made

repeated telephone calls into Pennsylvania to the plaintiff. His contacts with Pennsylvania were deemed insufficient to sustain jurisdiction under an earlier version of 15 P.S. § 2011(C).

**11.** In general, it is the act of granting a distributorship which constitutes "doing business" and serves to subject the grantor, rather than the grantee, to long-arm jurisdiction consistent with due process. Annot., 20 A.L.R.3d 1201, 1273 (1968).

Thus, long-arm jurisdiction can be asserted over Kennedy under Section 8309(a)(2).

In addition, Kennedy's purchase order for the products he had sold to Petroni directed Kaiser to ship merchandise to Petroni's Pennsylvania construction site. This constitutes "shipping of merchandise . . . indirectly" under section 8309(a)(3). The district court found that there was no evidence that Kennedy had shipped merchandise into Pennsylvania. We think it misconstrued section 8309(a)(3) when it reached that conclusion.[12]

■ A single shipment is sufficient to subject a foreign individual or corporation to personal jurisdiction under section 8309(a)(3). *M & N Meat Co. v. American Boneless Beef Corp.*, 380 F.Supp. 912 (W.D.Pa.1974); *Aquarium Pharmaceuticals, Inc., v. Industrial Pressing and Packaging, Inc.*, 358 F.Supp. 441 (E.D.Pa.1973), cited with approval in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11, 16 (1974).[13] Therefore, even though the district court determined that Kennedy had not engaged in a systematic course of conduct, it still could have held that Kennedy shipped merchandise within the meaning of section 8309(a)(3).[14]

Although Kennedy did not himself ship the merchandise, it is enough that he had it shipped "indirectly," that is, participated in a distributive chain whereby the merchandise arrived in Pennsylvania. *Smiley v. Gemini Investment Corp.*, 333 F.Supp. 1047 (W.D.Pa. 1971), cited with approval in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co., supra.* Even though Kennedy did not himself ship the products, his order to Kaiser, in which he had a participatory interest as a distributor, to ship the merchandise into the Commonwealth constitutes shipping indirectly within section 8309(a)(3).

Our determination that Kennedy's contacts with Pennsylvania constitute "doing business" under sections 8309(a)(2) and (3) forecloses the need for us to consider whether jurisdiction might also have been obtained under section 8309(a)(1) or section 8309(a)(4). Apparently, no court has construed the latter section of the long-arm statute, so we may properly leave the task of interpretation to the Pennsylvania courts.

An alternate ground for long-arm jurisdiction, adduced by Columbia, is 42 P.S.

12. It is uncontroverted that a shipment was made to the Petroni Construction Company site in Pennsylvania. The only dispute · is whether the shipment should be attributed to the Kennedy Company or to Kennedy personally. Kennedy raised this issue in his memorandum in opposition to plaintiff's motion for reconsideration, filed in the district court, stating:

. . . Exhibit D [Kaiser invoice] demonstrates that Kennedy did not ship the merchandise into the Commonwealth but that Kennedy Culvert & Supply indirectly actually shipped the merchandise into the Commonwealth and *not* until April 11, 1973 after the company was incorporated. [Emphasis in original]

13. *Gorso v. Bell Equipment Corp.*, 376 F.Supp. 1027 (W.D.Pa.1974); *Keene v. Multicore Solders, Ltd.*, 379 F.Supp. 1279, 1281 (E.D.Pa. 1974); *AAMCO, supra*, 368 F.Supp. at 1293; *Benn v. Linden Crane Co.*, 370 F.Supp. 1269, 1275–76 (E.D.Pa.1973).

14. Kennedy, in his brief in this court, cites *Bork v. Mills*, 458 Pa. 228, 329 A.2d 247 (1974), for the proposition that continuous activities are required even when jurisdiction is premised on shipping merchandise. The *Bork* case arose from an auto accident in Virginia, but the plaintiffs sought to invoke Pennsylvania long-arm jurisdiction on the basis of defendant's shipping of merchandise into the Commonwealth. The Pennsylvania Supreme Court held that, although the literal language of the predecessor to section 8309(a)(3) was satisfied, plaintiffs were required to allege further that the defendant's shipping activities were "continuous and substantial enough to permit the courts of Pennsylvania to exercise jurisdiction over him with respect to an unrelated cause of action." *Id.* at 249. Here Columbia claims that Kennedy's sales of Kaiser products have caused it to be injured, so the cause of action is intimately connected with Kennedy's shipments of Kaiser products to his customers. Therefore, the *Bork* holding is distinguishable.

§ 8305 (Supp.1975). In view of our disposition of this case, we do not reach it.

## IV.

■ We have held that Kennedy's activities in Pennsylvania fall within the ambit of 42 P.S. §§ 8309(a)(2) and (3). We must now decide if asserting long-arm jurisdiction offends the due process clause of the fourteenth amendment.

Generally, long-arm jurisdiction cases involve a resident plaintiff invoking the jurisdiction of its state's courts. For example, in *McGee, supra*, 355 U.S. at 223, 78 S.Ct. at 201, a forceful argument for upholding jurisdiction was the existence of the state's "manifest interest in providing effective means of redress for its residents." The Pennsylvania Supreme Court has identified the purpose of Pennsylvania's long-arm statute as providing "an appropriate forum for citizens to seek redress." *Image Ten, Inc. v. Walter Reade Organization, Inc.*, 456 Pa. 485, 322 A.2d 109, 114 (Pa.1974). In the instant case, a foreign corporation is seeking to use Pennsylvania's long-arm jurisdiction to reach a non-resident individual, so Pennsylvania's interest is less compelling.

■ However, very minimal contacts are required to satisfy due process, particularly in the jurisdictional context. This court has recently commented upon the due process limitation as applied by the United States Supreme Court in cases involving long-arm jurisdiction:

> Since *McGee v. International Insurance Co.*, . . . it has been clear that the due process clause defines a rather low threshold of state interest sufficient to justify exercise of the

state's sovereign decisional authority with respect to a given transaction.

\* \* \* \* \* \*

[T]he due process clause requires the identification of *any* Pennsylvania interest sufficient to justify the exercise of Pennsylvania sovereignty with respect to a given private transaction. *Aldens, Inc. v. Packel*, 524 F.2d 38, at 42–43, 45 (3d Cir. 1975).

Kennedy availed himself of the privilege of conducting activities in Pennsylvania when he entered into a sales agreement with Petroni Construction and had merchandise shipped into the Commonwealth. Thus, his activities comport with the due process concern articulated in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958):

> [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.[15]

Indeed, shipping products into a state, coupled with soliciting business and negotiating a contract there, has been held to constitute the minimum contacts necessary for due process. *Consolidated Laboratories, Inc. v. Shandon Scientific Co., Ltd.*, 384 F.2d 797, 801–802 (7th Cir. 1967). Therefore, we find nothing offensive to the due process clause in our holding that Kennedy's activities in Pennsylvania subject him to its long-arm jurisdiction.

The judgment of the district court in favor of the defendant, Robert A. Kennedy, will be reversed.

---

15. *See Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11, 15 (1974).