**CONTROLLED METALS, INC.**

v.

**NON–FERROUS INTERNATIONAL CORPORATION.**

Civ. A. No. 75–2955.

United States District Court, E. D. Pennsylvania.

March 24, 1976.

Alan D. Williams, Jr., Williams, Glantz & Schildt, Doylestown, Pa., for plaintiff.

Morris C. Solomon, Solomon & Spiegel, Elkins Park, Pa., for defendant.

## MEMORANDUM

McGLYNN, District Judge.

Plaintiff instituted this contract action in the Court of Common Pleas of Bucks County, Pennsylvania, alleging an oral contract for the sale of condenser tubing and seeking damages for the alleged breach thereof by the defendant. Defendant is a New York Corporation with its principal place of business in New York. Plaintiff alleged, however, that defendant was doing business in Pennsylvania and relied on the provisions of the Pennsylvania long-arm statute, 42 P.S. § 8301 *et seq.* to invoke the jurisdiction of the Pennsylvania court.

Defendant removed the case here under the provisions of 28 U.S.C. § 1441[1] and then filed a motion to dismiss asserting that this Court does not have *in personam* jurisdiction over the defendant and that the complaint fails to state a claim upon which relief can be granted.[2] For the reasons hereinafter stated, we deny defendant's motion.

## I

■ With regard to the jurisdictional question, we look to Pennsylvania's long-arm statute[3] and specifically Section 8302 which pertains to non-qualified foreign corporations.[4] A precondition to the exercise of *in personam* jurisdiction over the defendant is a finding either that its activities meet one of the criteria prescribed by section 8309(a) as "doing business"[5] or, that the defendant had such "minimum contacts" with Pennsylvania that maintenance of this suit would not offend due process.[6] *See International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 101 (1945), *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–223, 78 S.Ct. 199, 200–201, 2 L.Ed.2d 223, 226 (1957), *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1297 (1958) and *Columbia Metal Culvert Co., Inc. v. Kaiser Industries Corp. et al.,* 526 F.2d 724 (3d Cir. 1975).

■ A finding of minimum contacts in the constitutional sense is sufficient to sustain *in personam* jurisdiction under the law of Pennsylvania. *Orefice v.*

1. Removal was predicated on diversity of citizenship and the amount in controversy. Plaintiff, a Pennsylvania corporation, seeks $13,-316.62 in damages. Complaint at ¶ 4.

2. *See* Rule 12(b), Federal Rules of Civil Procedure.

3. See Rule 4(d)(7), Federal Rules of Civil Procedure.

4. 42 P.S. § 8302 provides:

   (a) *General rule.*—Any foreign corporation which shall have done any business in this Commonwealth without procuring a certificate of authority to do so from the Department of State as required by statute, shall be conclusively presumed to have designated the Department of State as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising within this Commonwealth.

5. 42 P.S. § 8309(a) provides:

   (a) *General rule.*—Any of the following shall constitute "doing business" for the purposes of this chapter:

   (1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

   (2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

   (3) The shipping of merchandise directly or indirectly into or through the Commonwealth.

   (4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.

   (5) The ownership, use or possession of any real property situate within this Commonwealth.

6. See 42 P.S. § 8309(b) which provides that:

   In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States.

*Laurelview Convalescent Center, Inc.,* 66 F.R.D. 136, 141 (E.D.Pa.1975), *H. Alpers and Associates v. Omega Precision Hand Tools, Inc.,* 62 F.R.D. 408, 410–411 & n. 3 (E.D.Pa.1974), *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 323 A.2d 11, 14 (1974).

In the context of this case, the issue boils down to whether a series of telephone communications between an out-of-state buyer and an in-state seller and the delivery by mail to the seller of shipping paraphernalia represents "minimum contacts".

According to the affidavit of plaintiff's agent, Robert J. Mc Van, this episode began on May 28, 1975 when Paul Gartlan, representing the defendant, telephoned Mc Van requesting price information for condenser tubing.[7] Mc Van was working as a desk salesman at plaintiff's business location in Warrington, Pennsylvania. Mc Van provided the information to Gartlan by telephone the next day. Later on the 29th, Gartlan placed an order through Mc Van over the telephone. After contacting plaintiff's supplier, Mc Van again called Gartlan confirming the terms of the order over the telephone.[8]

On June 2, 1975, plaintiff received a package from defendant containing packing lists, bills of lading and packing slips bearing defendant's letterhead. These items were sent (a common practice according to Mc Van) in order for plaintiff to ship the tubing in defendant's name. Also on the 2nd, Gartlan telephoned Mc Van to inquire whether the tubing had been cut to conform to defendant's order specifications. Mc Van informed Gartlan, after first check-ing with the supplier, that the tubing was cut to defendant's specifications and was ready for shipment on the 3rd of June. According to Mc Van, Gartlan then requested that the shipment be delayed.

The next day, June 3rd, Gartlan telephoned Mc Van and informed him that defendant's customer had cancelled its order with the defendant. Gartlan requested that Mc Van try to lower the price of the tubing. Mc Van telephoned Gartlan the following day and gave him a revised price. On the 5th of June, plaintiff invoiced defendant at the revised price. Thereafter, during the weeks of June 9 and June 16, 1975, Mc Van and Gartlan attempted to negotiate a new price without success. On June 25, 1975, plaintiff received in the mail a copy of its original invoice that had been sent to defendant and, also, a memo from Gartlan on behalf of the defendant advising of the return of the invoice. Plaintiff contends that this action represents a breach of the alleged agreement.[9]

The affidavit of Harold Ames, President of defendant, sets forth the following: defendant's only place of business is in New York. As for Pennsylvania, it conducts no business there, has no bank accounts, no mailing address, no telephone listing, no business facility, no employees and neither executes nor performs any contracts or sales in Pennsylvania.[10]

The test for minimum contacts is neither a simple quantitative analysis nor a qualitative review of the activity of the defendant, but rather a combination[11] which includes not only the con-

---

7. According to the affidavit of defendant's President, Harold Ames, neither Gartlan nor any other agent of defendant ever entered or was present in Pennsylvania for the purpose of any communication with plaintiff's agent. Affidavit of Harold Ames, ¶ 5.

Since plaintiff does not contend otherwise, we will assume that these communications were made between New York and Pennsylvania.

8. Affidavit of Robert J. Mc Van, ¶ 4.

9. Complaint, ¶ 8.

10. Affidavit of Harold Ames, ¶ 4.

11. *International Shoe Co. v. Washington, supra,* 326 U.S. at 319, 66 S.Ct. at 159, 90 L.Ed. at 103, where the Supreme Court stated:

It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative.

duct but the expectations of the parties. *Campbell v. Triangle Corp.*, 336 F.Supp. 1002, 1007, (E.D.Pa.1972); and *Proctor & Schwartz, supra,* 323 A.2d at 15.

■ The affidavits illustrate that defendant's agent, though never within the Commonwealth, had telephone contacts with plaintiff's agent out of which the purported agreement was formed. Since acceptance of defendant's offer to buy was made by plaintiff's agent in Pennsylvania and, since performance was to take place within Pennsylvania, the agreement must be considered a Pennsylvania contract. *See Inpaco, Inc. v. Mc Donald's Corp.,* No. 74–1251 at 6 n. 3 (E.D.Pa. filed January 9, 1976), citing *Millan Bros. & Co. v. Armour and Co.,* 144 F.Supp. 857, 859 (E.D.Pa.1956).

■ A contractual obligation is a sufficient basis for a finding that a corporation had purposefully availed itself of the privilege of acting within the Commonwealth. *See Proctor & Schwartz, supra,* at 15. Here, as in *Proctor & Schwartz* and *Inpaco, Inc. v. Mc Donald's Corp., supra,* the agreement entered into by defendant has "a realistic economic impact on the commerce of this Commonwealth" 323 A.2d at 15, and, in addition, this cause of action arises directly from the contacts between the plaintiff and defendant. *See Trachtman v. T. M. S. Realty And Financial Serv-*

*ices,* 393 F.Supp. 1342, 1345 (E.D.Pa. 1975).

As the Court concluded in *Proctor & Schwartz, supra,* 323 A.2d at 15–16:

The entering into commercial obligations and the breach of those obligations in the forum state provides the necessary jurisdictional relationship.

With regard to the second part of the twofold inquiry, it appears that the maintenance of this suit is fair and reasonable. Defendant initiated the communications that led to the agreement. Further, defendant mailed shipping materials to the plaintiff demonstrating a recognition of plaintiff's obligation as well as an expectation of performance. Moreover, defendant's agent attempted to re-negotiate the terms providing added weight to the belief that defendant recognized the existence of a contractual obligation. Such conduct evidences defendant's active role in dealing with plaintiff. Defendant was not a "passive purchaser" by any means.[12] The facts here are not at all similar to those presented in *Hanson v. Denckla, supra,* where the Court stated that the "unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state." [13] Here the defendant had contact with the forum state and cannot reasonably assert that the exercise of jurisdiction over it would go beyond its expectations.[14]

---

The test is not merely . . . whether the activity . . . is a little more a little less. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. (Citations omitted).

**12.** To the extent the buyer vigorously negotiates, perhaps dictates, contract terms . . . and . . . departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over him disappears.

*In-Flight Devices Corporation v. Van Dusen Air, Inc.,* 466 F.2d 220, 233 (6th Cir. 1972). See also *Proctor & Schwartz v. Cleveland Lumber Co., supra* at 16.

**13.** 357 U.S. at 253, 78 S.Ct. at 1239, 2 L.Ed.2d at 1298.

**14.** Although defendant's affidavit points out that plaintiff relies only on the telephone communications and offers the argument that defendant, on that factual basis, was not present or conducting business in Pennsylvania, the Sixth Circuit previously dealt with a similar question. The circumstances in *In-Flight Devices Corp., supra,* compelled the Court to review the due process requirements relating to the application of Ohio's long-arm statute, R.C. Ohio § 2307.382, in finding jurisdiction over defendant Minnesota corporation for breach of contract and damage to the plaintiff's business reputation. Significant was the analysis concerning expectations and minimum contacts:

One indicia of fairness which courts have frequently been concerned with is the nature

Since the agreement was to be performed in Pennsylvania, defendant should have anticipated that a breach of the agreement on its part would have consequences in this state. The purpose of Pennsylvania's long-arm statute is to provide "an appropriate forum for citizens to seek redress for harm caused by foreign corporations which have availed themselves of the privilege of 'doing business' in the Commonwealth."[15] Pennsylvania has an interest in protecting a resident by asserting jurisdiction over a foreign corporation whose contact with the state caused damage to the Pennsylvania resident.[16]

Since "very minimal contacts are required to satisfy due process, particularly in the jurisdictional context", *Columbia Metal Culvert Co., Inc. v. Kaiser Industries Corp.*, 526 F.2d 724, 730 (3d Cir. 1975), we are satisfied that under the facts of this case, the Court has jurisdiction over the person of the defendant.

## II

 As for defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted, it is evident from the foregoing discussion that plaintiff has alleged a valid claim based on a breach of contract and,

accordingly, the motion based on this ground will also be denied. *See United States ex rel. Tyrrell v. Speaker,* 471 F.2d 1197, 1200 (3d Cir. 1973).

and quantity of the defendant's physical contacts with the forum state. Physical *presence* in the state is not a prerequisite to the assertion of jurisdiction over the defendant. Neither *does its existence* alone establish a sufficient basis for such jurisdiction. . . . Nevertheless the nature of the direct physical contacts between defendant and plaintiff may be useful in a close case as a gauge of the significance the parties attach to the events occurring in the forum state and thus of their expectations. . . . Again it must be emphasized that no particular type of physical contact is required as a jurisdictional prerequisite. *A letter or a telephone call may, in a given situation, be as indicative of* substantial involvement with the forum state as a personal visit by the defendant or its agents. Certainly in an appropriate case the entering of a contract to be performed within the forum state may provide *sufficient basis for the assertion of jur*isdiction over a nonresident defendant without the physical presence of such defendant or his agents. The presence or absence of the defendant, the nature of its communications with the resident party are relevant to jurisdictional questions—not because of any antiquated idea that physical presence is a jurisdictional prerequisite imposed by the limits of state sovereignty. They are relevant because they provide a clue to the significance attached by the defendant to the activities occurring within the forum state—and thus a clue as to his expectations. (Citations omitted, *emphasis* added). 466 F.2d at 234–35.

15. *Image Ten, Inc. v. Walter Reade Organization, Inc.,* 456 Pa. 485, 322 A.2d 109, 114 (1974).

16. [T]he due process clause requires the identification of *any* Pennsylvania interest sufficient to justify the exercise of Pennsylvania sovereignty with respect to a given private transaction.

*Aldens, Inc. v. Packel,* 524 F.2d 38, 45 (3d Cir. 1975).