STERLING INDUSTRIAL CORPORATION, dba Sterling Products Company, Plaintiff,

v.

TELEPHONE, INC., Defendant.

No. G79–34 Misc.

United States District Court,
W. D. Michigan, S. D.

Feb. 25, 1980.

Schmidt, Howlett, Van't Hof, Snell & Vana, Grand Rapids, Mich., S. David Worhatch, Grand Rapids, Mich., of counsel, for plaintiff.

Loomis, Ewert, Ederer, Parsley, Davis & Gotting, Lansing, Mich., Harvey J. Messing, Lansing, Mich., of counsel, for defendant.

## OPINION

NOEL P. FOX, Chief Judge.

Defendant has petitioned this court to void a judgment which was entered against it by a Pennsylvania district court. It has also requested that, while this motion is under consideration, this court stay the judicial sale which was ordered to satisfy the judgment.

Plaintiff in this case is a Pennsylvania corporation which manufacturers various types of telephone equipment. Defendant, Telephone, Inc., provides telephone services to individual customers, and for the past few years, it has purchased telephone equipment from plaintiff. It is a Michigan corporation, with Michigan being its principal place of business. It has no offices or agents in Pennsylvania.

On August 14, 1979, Sterling filed suit against defendant in the United States District Court for the Middle District of Pennsylvania, seeking to recover sums due for goods which it delivered to defendant, plus interest. Defendant was served at its place of business by a United States Marshal,[1] but it did not answer the complaint or make an appearance in the Pennsylvania court. That court entered a default judgment against defendant for the sum of $63,591.26.

Subsequently, this judgment was registered in the clerk's office of the Federal District Court for the Western District of Michigan. An execution was issued which directed the Marshal to seize and hold sufficient amounts of defendant's property so that the judgment could be satisfied from its sale. Inventory valued at more than $60,000 was seized, and it is scheduled to be sold tomorrow, February 26, 1980, at a judicial sale.

1. At the hearing on this matter, defendant conceded that it was only attacking the Pennsylvania court's jurisdiction and did not dispute the way in which it was served with process.

With less than a week to go before the sale, defendant filed an appearance in this court. It has also moved to have the judgment of the Pennsylvania court ruled void for lack of jurisdiction over its person. It has additionally requested that this court stay the sale of its property while this motion is under consideration.

Federal Rule of Civil Procedure 62(b) gives this court the power to stay a judgment pending the disposition of a motion seeking relief from that judgment. Rule 60 sets out the grounds on which relief from a judgment can be granted. These include: mistake or inadvertence; newly discovered evidence; fraud or misrepresentation; voidness of the judgment; or satisfaction of the judgment.

In the instant case, defendant contends that the judgment is void because the District Court for the Middle District of Pennsylvania never had personal jurisdiction over it. Since defendant did not appear before that court, it is free to collaterally attack its jurisdiction in this court.

### (a)

■■ It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Pennoyer v. Neff,* 95 U.S. 714, 732–733, 24 L.Ed. 565 (1878). The existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought, and a sufficient connection between the defendant and the forum state as to make it fair to require the defendant to defend in that forum. *Kulko v. California Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

■ When a defendant challenges personal jurisdiction, the plaintiff has the burden of proving by a preponderance of the evidence that the court has jurisdiction over the defendant. *DiCesare-Engler Productions, Inc. v. Mainman, Ltd.,* 81 F.R.D. 703, 705 (W.D.Pa.1979). To meet this burden, "the plaintiff is obligated to come forward with facts, by affidavit or otherwise, in support of personal jurisdiction." *Id.*

■ In determining if personal jurisdiction has been established, two separate and independent tests must be met. First, the conduct of the defendant must be shown to be within the relevant statutory provisions of the forum state's long-arm statute. *Controlled Metals, Inc. v. Non-Ferrous International Corp.,* 410 F.Supp. 339 (E.D.Pa.1976). Second, assuming the statutory requirements are satisfied, the plaintiff must establish that the defendant had such "minimum contacts" with the forum that maintenance of the suit would not offend due process. *Id. See, McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–223, 78 S.Ct. 199, 200–201, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington, supra* at 316, 66 S.Ct. at 158.

■ The present Pennsylvania long-arm statute is found in 42 Pa.C.S.A. § 5322. Section 5322(a) lists various types of minimum contacts that will suffice for the exercise of personal jurisdiction over persons residing outside of the State.[2] Section 5322(b) states:

---

**2.** § **5322.** Bases of personal jurisdiction over persons outside this Commonwealth

(a) General rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accom-

In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

[6] Pennsylvania courts have ruled that section 5322(b) subsumes section 5322(a) since it makes the statutory reach coextensive with the requirements of due process. This means that a court need only evaluate the facts under the second test stated

above. If due process would be satisfied by the contacts which defendant had with Pennsylvania, then the exercise of personal jurisdiction will be upheld. *Gagner v. Parsons & Whittemore, Inc.*, 450 F.Supp. 1093, 1096 (E.D.Pa.1978); *Ward v. Baltimore Stevedoring Co.*, 437 F.Supp. 941, 943 (E.D. Pa.1977); *Controlled Metals, Inc., supra; Impaco Corp. v. McDonald's Corp.*, 413 F.Supp. 415, 418 (E.D.Pa.1976).

In *Kulko v. California Superior Court, supra*, the Court stated that in determining if a defendant's contacts with the forum state are such that the maintenance of the suit will not offend "traditional notions of

plishing an object with the intention of initiating a series of such acts.

(iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.

(v) The ownership, use or possession of any real property situate within this Commonwealth.

(2) Contracting to supply services or things in this Commonwealth.

(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

(5) Having an interest in, using, or possessing real property in this Commonwealth.

(6) Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting, or being a person who controls, or who is a director, officer, employee or agent of a person who controls, an insurance company incorporated in this Commonwealth.

(7) Accepting election or appointment or exercising powers under the authority of this Commonwealth as a:

(i) Personal representative of a decedent.

(ii) Guardian of a minor or incompetent.

(iii) Trustee or other fiduciary.

(iv) Director or officer of a corporation.

(8) Executing any bond of any of the persons specified in paragraph (7).

(9) Making application to any government unit for any certificate, license, permit, registration or similar instrument or authorization or exercising any such instrument or authorization.

(10) Committing any violation within the jurisdiction of this Commonwealth of any

statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit. Defendant contends that in determining what constitutes the "transacting of business" under section 5322(a), this court should look to 15 P.S. § 2001. This statute states that a foreign corporation must obtain a certificate from the Pennsylvania Department of State before "doing any business" in the State. It sets forth certain actions which do not constitute the "doing of business," and these exceptions include the soliciting of orders by mail or the transacting of business in interstate commerce.

In this court's opinion, this statute is inapplicable in the instant case for there is no indication that the business contacts which would require registration with the State are coextensive with those minimal contacts needed to sustain personal jurisdiction over a business corporation. All indications are that the contacts needed for registration are greater than those which will support personal jurisdiction. This conclusion is based on the fact that Pennsylvania law specifically provides that a corporation which has conducted business in the State without first procuring a certificate from the Department of State can still be amendable to service of process for its actions in the State. *See, Gagner v. Parsons & Whittemore, Inc.*, 450 F.Supp. 1093, 1095 n.3 (E.D.Pa.1978). Additional support can be found in those cases which have sustained personal jurisdiction based on contacts which would not suffice for registration purposes. *See e. g., DiCesare-Engler Productions, Inc. v. Mainman, Ltd.*, 81 F.R.D. 703, 707–709 (W.D.Pa.1979) (telephone calls and letters can sustain personal jurisdiction); *Controlled Metals, Inc. v. Non-Ferrous International Corp.*, 410 F.Supp. 339 (E.D.Pa. 1976) (telephone calls and letters suffice for personal jurisdiction).

fair play and substantial justice," *Id., quoting International Shoe, supra* 326 U.S. at 316, 66 S.Ct. at 158, two factors should be considered. First, "the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice are, of course, to be considered . . . ." *Id.* Second, "an essential criterion in all cases is whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State." *Id., quoting International Shoe, supra* at 316–317, 66 S.Ct. at 158–159. Similar limitations have been enunciated by the Third Circuit and used in cases involving personal jurisdiction in Pennsylvania. *Empire Abrasive Equipment Corp. v. H. H. Watson, Inc.,* 567 F.2d 554, 557–558 (3rd Cir. 1977), *quoting Jonnet v. Dollar Sav. Bank,* 530 F.2d 1123, 1140 (3rd Cir. 1976) (Gibbons, J., concurring).

### (b)

In the instant case, subjecting defendant to suit in Pennsylvania would not transgress the first of these due process limitations. While it is probably true that Michigan would be an appropriate forum, it cannot be said that Pennsylvania's interest is so insubstantial that it would impermissibly intrude on Michigan's right to have its courts adjudicate this case. *Empire Abrasive Equipment Corp., supra* at 558. The plaintiff is a Pennsylvania corporation located in Pennsylvania, which supplied goods to defendant in Michigan. "Pennsylvania's interest in its corporate resident seller of goods suffices to justify the exercise of adjudicatory authority to the exclusion of other sovereignties, provided such exercise [is consistent with the second due process limitation]." *Id.*

Reviewing the evidence relative to this second factor, the parties' testimony and affidavits were in some conflict as to the "quality and nature" of defendant's activity in Pennsylvania, but this court is of the opinion that no matter how these factual discrepancies are resolved there were sufficient minimal contacts with Pennsylvania to sustain jurisdiction.

Kenneth Shapley, president of Telephone, Inc., testified that he could not remember the first contact that Telephone, Inc. had with Sterling, nor could he remember who had initiated that contact. From his testimony, it appears that initial contact was made before August 1978. This is because he testified that in August 1978 he and Mike Maxwell, vice president of Telephone, Inc., visited defendant's Pennsylvania offices as part of on-going negotiations between the companies.

He stated that the August 1978 visit was the only one that he and Maxwell ever made to plaintiff's office. During this visit, he did not remember seeing any product demonstrations, nor did he recall ordering any goods, or taking any with him when he left.

Between November 1978 and August 1979, Telephone, Inc. ordered the goods which formed the basis of the Pennsylvania judgment. Defendant took the initiative in ordering these goods for its brief states that it "submitted oral and written purchase orders to Plaintiff" in Pennsylvania. These orders were submitted via telephone or mail, and the goods were shipped to Michigan.

Defendant did not specify the number of contacts it had with plaintiff—either by way of mail or telephone. Its attorney, however, did state that there had been substantial contacts between the companies.

Plaintiff's evidence was presented by way of affidavit because of the short notice of the hearing. This affidavit, prepared by J. Michael Mills, vice president and general manager of Sterling Industrial Corporation, states that during the fall of 1978 Kenneth Shapley and Mike Maxwell visited Sterling's Pennsylvania offices and warehouses. During this visit, various products were demonstrated and one was ordered. According to Mills, this was not the only visit which Shapley and Maxwell made to defendant's offices in Pennsylvania. On subsequent visits, they allegedly ordered equipment and on one occasion Maxwell ordered and took with him a significant amount of goods and merchandise.

Between the fall of 1978 and May 1979, Telephone, Inc. submitted many telephone orders to Sterling Products. In June 1979, prior to filing suit in Pennsylvania District Court, more contacts were made as the parties attempted to negotiate a way for defendant to pay its debt to plaintiff, and it was agreed that defendant would pay $500 per week. Plaintiff continued to sell goods to defendant on a cash-on-delivery basis, but when defendant failed to make the $500 payments suit was filed. Subsequently, Telephone, Inc. again contacted defendant and attempted to work out a way for it to pay the debt, but this was unsuccessful.

To this court, the number of visits which defendant made to the forum state is not decisive, because due process can be satisfied even if the defendant does not physically appear in the State. *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933, 967 (10th Cir. 1977). This can be seen in those Pennsylvania decisions which have held that telephone or mail contact can support jurisdiction. After reviewing these decisions, it is this court's opinion that even if defendant had made no visit to Pennsylvania, jurisdiction could still have been based on the parties' telephone and mail contacts. The visit, or visits, merely make it more certain that sufficient minimal contacts exist to meet the fairness requirements of due process.

In *Empire Abrasive Equipment Corp., supra,* the plaintiff, a Pennsylvania company, had distributed a mail order catalog describing products that it manufactured. A defendant from Rhode Island telephoned the plaintiff's office in Pennsylvania and ordered goods worth approximately $30,000. Defendant confirmed the sale by a letter which it sent to plaintiff, but two weeks later it sent another letter cancelling the purchase order.

When plaintiff brought suit in Pennsylvania, defendant claimed that the court did not have personal jurisdiction over it. The Third Circuit found it had insufficient facts

to decide this, but in remanding to the district court it set forth some factors it should consider in deciding this issue. First, it ruled that due process would not permit a corporate seller to dragoon single customers into the state on the basis of mail order transactions from distant places. However, this court noted that personal jurisdiction could be based on (1) the fact that there were prior dealings between the parties; (2) the fact that the orders were not for typical mail order merchandise, but for high-priced industrial equipment; (3) the fact that for the plaintiff to supply these contracts it had to enter into subcontracts with other suppliers; and (4) the fact that defendant, and not plaintiff, initiated the dealings between the parties. *Id.,* at 558–559.

*Controlled Metals Inc. v. Non-Ferrous International Corp., supra,* involved a Pennsylvania plaintiff which manufactured and sold tubing for various industrial uses. Defendant, a New York corporation, telephoned plaintiff and requested the price of its tubing. It telephoned again the next day and placed an order; plaintiff telephoned back and confirmed the order. A few days after this, defendant sent plaintiff the materials it would need to ship the tubing in defendant's name. That same day, defendant telephoned to learn if the tubing had been cut. The next day, it called and tried to negotiate a lower price for the tubing. Several more phone calls and a letter were exchanged, until finally plaintiff believed that its contract had been breached and suit was filed. The district court for the Western District of Pennsylvania ruled that these contacts were sufficient to support personal jurisdiction.

A similar holding was reached in *DiCesare-Engler Productions, Inc. v. Mainman, supra,* where a substantial number of telephone calls and letters were the only contacts with Pennsylvania.[3]

The only Pennsylvania case which did not find enough minimum contact from tele-

---

**3.** *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir. 1977) provides additional support for the view that a defendant's physical presence in the forum state is not a prerequisite to the exercise of personal jurisdiction. In that case, the Tenth Circuit held that suffi-

cient minimal contacts existed when defendant wrote to plaintiff and initiated business and then followed this with written purchase orders for goods which were manufactured in, and shipped from, the forum state.

phone calls and letters is *Gagner v. Parsons & Whittemore, Inc.,* 450 F.Supp. 1093 (E.D. Pa.1978). The court found that the parties' telephone calls and letters were not numerous or of a substantial quality. Particular emphasis was placed on the fact that the major negotiations between the parties were conducted in New York and not Pennsylvania.

The instant case resembles *Controlled Metals* and *DiCesare-Engler Productions,* and also meets the criteria of *Empire Abrasive, supra.* First, Telephone, Inc. had dealings with plaintiff both before and after it purchased the goods which were the subject of the Pennsylvania judgment. *Empire Abrasive, supra.* Second, there were a substantial number of telephone calls and letters exchanged between the parties. *Id.*; *Controlled Metals, supra.* Third, defendant initiated the orders for the goods now subject to the judgment. *Empire Abrasive, supra.* Fourth, the goods it purchased were not typical consumer, or mail order goods. Fifth, defendant, being a corporation, should have foreseen that its failure to pay for the goods it ordered would cause injury to plaintiff in Pennsylvania.[4]

In this court's opinion, these contacts would suffice to support personal jurisdiction in Pennsylvania. But if the letters and telephone calls are believed to be insufficient, then one need only add to this the personal visit which defendant's officers made to plaintiff's offices in Pennsylvania. When this is woven into the calculus, personal jurisdiction in Pennsylvania is assured.

---

**4.** Corporations are conducting more and more business via the telephone and the mails. They should be able to foresee that when they use these methods of communication to order goods directly from another corporation the failure to pay for these goods will injure the other company at its place of business.

This type of foreseeability distinguishes the instant case from *Heckel v. Beech Aircraft Corp.,* 467 F.Supp. 278 (W.D.Pa.1979), in which the defendant could not anticipate that its activities would cause injury in the forum state.