Michael WARD et al.

v.

BALTIMORE STEVEDORING COMPANY, and Prodex International, and Erskine Freight Forwarding Co.

Civ. A. No. 77–144.

United States District Court,
E. D. Pennsylvania.

Sept. 12, 1977.

Bert Zibelman, Philadelphia, Pa., for plaintiff.

Roger F. Cox, Philadelphia, Pa., for Erskine Freight Forwarding Co.

## MEMORANDUM

McGLYNN, District Judge.

This is one of several related actions brought in this District by a group of longshoremen who allegedly were injured while discharging a cargo of highly toxic maleic anhydride from the M/V AROSIA while she was docked at the Port of Philadelphia. Defendant Erskine Freight Forwarding Co., Inc. ("Erskine") has moved to dismiss the complaint as to it pursuant to Fed.R.Civ.P. Rules 12(b)(2) and (6), or in the alternative, for summary judgment pursuant to Fed.R. Civ.P. Rule 56. For the reasons hereinafter set forth, Erskine's motion to dismiss will be granted.

According to affidavits submitted by its President, Erskine is a New York corporation engaged in freight forwarding, with its principal place of business and sole office located in New York City. It is not registered to conduct business in Pennsylvania, or in any state other than New York. Erskine's sole involvement in this case stems from the fact that it prepared the bill of lading under which the cargo was to be transported from Baltimore to Leningrad via Vasteras, U.S.S.R.

In support of its Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Erskine asserts that it conducts no business activities in Pennsylvania, and otherwise has no contacts with this state sufficient to justify the exercise of *in personam* jurisdiction over it. Despite the absence of the required jurisdictional allegations in its complaint, plaintiff now urges that by preparing the bill of lading, Erskine participated in the shipping of merchandise into or through Pennsylvania by placing the cargo

into the stream of commerce, thereby doing business in this state as a non-qualified foreign corporation. 42 Pa.Const.Stat.Ann. §§ 8309(a)(3) and 8302(a) (1975).

I cannot agree with plaintiff's contention that Erskine's preparation of a bill of lading is sufficient to constitute "doing business" under § 8309(a)(3). Those cases cited by plaintiff as supportive of this theory all involve a manufacturer, importer, or distributor of goods shipped directly or indirectly into Pennsylvania. *Scafati v. Bayerische Motoren Werke, A.G.*, 53 F.R.D. 256 (W.D.Pa.1971); *Smiley v. Gemini Investment Corp.*, 333 F.Supp. 1047 (W.D.Pa. 1971); *Benn v. Linden Crane Co.*, 326 F.Supp. 995 (E.D.Pa.1971); *Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231 (9th Cir. 1969). My research has failed to disclose a single case in this state in which a freight forwarder, whose only task was to prepare a shipping document pursuant to the instructions of its client, has been found to be "doing business" within § 8309(a)(3). In my opinion, the mere preparation of one bill of lading by a freight forwarder is a far too tenuous relationship to a shipment of goods to be considered "doing business". This is particularly true where the bill of lading itself did not indicate that the goods would be shipped into or through Pennsylvania, and where the forwarder had no notice that the vessel involved might call at a Pennsylvania port. In fact, the discharge of the cargo at Philadelphia was wholly contrary to the shipping instructions of the bill of lading.

■ Despite the fact that Erskine's conduct with respect to this shipment does not rise to the level of "doing business", jurisdiction may nevertheless be sustained upon a finding of minimum contacts with the forum state in the constitutional sense. *Controlled Metals, Inc. v. Non-Ferrous International Corp.*, 410 F.Supp. 339 (E.D.Pa. 1976). In essence, due process requires the existence of minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945).

Both parties cite *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11 (1974) as setting forth the guidelines for a determination of whether the requisite minimum contacts are present in a given case.

"First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, [357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)]. Secondly, the cause of action must arise from defendant's activities within the forum state. *See Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968); *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F.Supp. 550 (D.Conn.1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington, supra* . . . ." 228 Pa. Super. at 19, 323 A.2d at 15.

With respect to the first requirement of *Proctor & Schwartz*, it is clear that Erskine did not purposely avail itself of the privilege of acting within Pennsylvania. The bill of lading was prepared wholly within the state of New York, and provided for a shipment of cargo from Baltimore to Leningrad via Vasteras, without mention of a stopover or other contact with Pennsylvania. Under these circumstances, Erskine could not reasonably have foreseen any connection of the cargo with this state. *See Proctor & Schwartz, Inc. v. Cleveland Lumber Co., supra.* This is to be contrasted with the situation in *Smiley v. Gemini Investment Corp., supra*, wherein it was held that a California importer and distributor of firearms should reasonably foresee the possibility that its product may eventually enter Pennsylvania through the normal distributive chain.

The second requirement as stated in *Proctor & Schwartz* is also lacking in this case since Erskine conducted no activities sufficiently related to Pennsylvania from which that cause of action could have arisen.

Finally, while it is quite reasonable from both a due process and policy standpoint to subject a non-resident manufacturer, importer or distributor to jurisdiction wherever its products may cause harm, since to do so encourages those with a substantial interest in a product to be responsible for its safety, nevertheless, this justification is absent in the case of a freight forwarder, who has no interest in the product other than to perform the purely ministerial task of arranging for its movement from one location to another. I therefore conclude that Erskine's contacts with the shipment in question are not sufficient to justify the exercise of *in personam* jurisdiction in Pennsylvania.

Even if I were to find that jurisdiction lies under the facts presented here, the complaint against Erskine must nevertheless be dismissed for failure to state a cause of action upon which relief can be granted. Plaintiff argues that a freight forwarder is under a duty to note on the bill of lading that a particular cargo is dangerous. Assuming arguendo that this is true, the duty exists only where the forwarder knows or should know of the dangerous nature of the cargo. There is no allegation that Erskine was told that the maleic anhydride could cause harm if improperly packaged or handled. The primary responsibility for the proper labeling of the cargo rests with the shipper and there is no duty on the part of the freight forwarder to independently investigate each cargo to determine whether and to what extent the cargo may be dangerous.

For the reasons set forth in the foregoing memorandum, Erskine's motion to dismiss pursuant to Fed.R.Civ.P. Rules 12(b)(2) and (6) is granted.