**Joseph MULLER and Margaret Muller,**

v.

**TEMURA SHIPPING CO., LTD., Scandinavian Continental Lines, British Steel Corp., Inc., B.S. Shipping Services, Tees and Hartlepool Port Authority.**

No. 84–3957.

United States District Court, E.D. Pennsylvania.

Feb. 28, 1986.

Stanley B. Gruber, Philadelphia, Pa., for plaintiffs.

Carl D. Buchholz, III, Philadelphia, Pa., for Temura Shipping Co., Ltd.

Michael Saltzburg, Philadelphia, Pa., for British Steel Corp., Inc. and B.S. Shipping Services.

Michael D. Brophy, Philadelphia, Pa., for Tees and Hartlepool Port Authority.

## OPINION

LUONGO, Chief Judge.

In October of 1983 defendant Tees and Hartlepool Port Authority (T & H) loaded a cargo of steel on board the S.S. Temura in a United Kingdom port. Plaintiff Joseph Muller was injured while discharging that cargo in Philadelphia and he brought this action against several defendants, including T & H, contending, *inter alia,* that T & H had stowed the steel improperly. On June 17, 1985 T & H moved to dismiss the claims against it for lack of personal jurisdiction. By agreement of counsel for all the parties, in lieu of extensive discovery on the jurisdictional issue, T & H furnished a list of the vessels and the amount of cargo it had loaded over a period of time for discharge in the port of Philadelphia.[1] Based on that information and following oral argument, in a ruling from the bench, I denied T & H's motion to dismiss and entered an Order dated October 2, 1985. T & H has now filed a motion for reconsideration of the October 2 Order or, in the alternative, for certification of the matter for interlocutory appeal under 28 U.S.C. § 1292(b). For the reasons stated below, I will deny the motion for reconsideration and the alternative motion for § 1292(b) certification.

In support of its original motion to dismiss, T & H submitted uncontested affidavits averring that: (1) it is a business organization organized and existing under the laws of the United Kingdom; (2) it is not licensed or incorporated to do business in the United States or Pennsylvania; (3) it has never registered or attempted to do

1. A copy of that list (excluding the computations of T & H's counsel) is attached as Appendix A.

business in Pennsylvania; (4) it does not own, lease, rent or sell any property in Pennsylvania; (5) it has no office, place of business or employees in Pennsylvania; (6) it has no mailing address or telephone number in Pennsylvania; and (7) it has no agents or sales representatives in Pennsylvania. T & H conceded that it knew the S.S. Temura would be unloaded in Pennsylvania and that it had loaded approximately 20 ships between March 30, 1982 and September 8, 1984 which it knew were destined for Philadelphia. According to T & H, it loaded the S.S. Temura pursuant to a contract with defendant British Steel Corporation, a United Kingdom corporation. T & H also alleged that British Steel is the only customer for which it loads cargoes destined for United States ports.

In their arguments with respect to the motion to dismiss, the parties focused on whether T & H's knowledge that it was loading a ship bound for Pennsylvania was sufficient to establish personal jurisdiction. I concluded, for reasons stated at time of oral argument, that personal jurisdiction existed. Because T & H has moved for reconsideration, however, I will set forth my reasons in writing.

Pursuant to Fed.R.Civ.P. 4(e), a district court may assert personal jurisdiction over a nonresident defendant to the extent permitted by the laws of the state in which the district court sits. Pennsylvania has authorized the exercise of jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b).

Where, as in this case, defendant's activity outside the forum is alleged to have caused harm within it, constitutional requirements are satisfied if defendant has minimum contacts with the forum. *Simkins Corp. v. Gourmet Resources International, Inc.,* 601 F.Supp. 1336, 1340–41 (E.D.Pa.1985). Jurisdiction may be asserted over a defendant whose "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). As the Third Circuit has held, "[s]tanding alone, the fact that the defendant could foresee that its conduct might affect the forum state, or that its product might find its way to the forum state, is too attenuated to constitute such a 'reasonable expectation.'" *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284–85 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). In *DeJames,* the defendant, a Japanese corporation, had done conversion work on a ship in Japan. Plaintiff was injured on board the ship while it was moored in New Jersey, and brought suit in the United States District Court for the District of New Jersey. The Third Circuit recognized that defendant could have foreseen that the ship, a large automobile carrier, "was capable of transporting cars to any port in the world." *Id.* at 286. The court held that this type of foreseeability alone was an insufficient basis for personal jurisdiction. *Id.*

■ In this case, however, T & H *knew* that the cargo it loaded would be discharged in Pennsylvania. In addition, it had loaded Pennsylvania-bound ships on 19 other occasions between March of 1982 and September of 1984. Those ships carried a total cargo of 30,854 tons, of which 14,798 tons (approximately 48%) were destined for discharge at Philadelphia.

Unlike the incidents in *DeJames, World-Wide Volkswagen* and the other cases cited by T & H,[2] the presence of the vessel in

2. T & H relied in part on *Davis v. C & NW Transp. Co.,* 266 Pa.Super.Ct. 558, 405 A.2d 959 (1979), and *Ward v. Baltimore Stevedoring Co.,* 437 F.Supp. 941 (E.D.Pa.1977). In *Davis,* the defendant loaded cargo onto a railroad car in Illinois and plaintiff was injured while unloading the cargo in Pennsylvania. The record did not show that defendant had loaded Pennsylvania-bound cars on any other occasion. The court held that "[t]he arrival in Pennsylvania of a single railroad car loaded by ... [defendant] in Illinois" was not sufficient to establish jurisdiction even if defendant "may have been aware" that the car "would eventually be part of a train bound for Pennsylvania." *Davis,* 405 A.2d at 963. In *Ward,* the defendant's only

Pennsylvania was not fortuitous. T & H should reasonably have expected both that a negligently loaded cargo could cause injury in Pennsylvania and that an injured party would bring suit in Pennsylvania. On these grounds, I concluded that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). *See Raffaele v. Compagnie Generale Maritime,* 707 F.2d 395, 397–98 (9th Cir.1983); *Sunn Classic Pictures, Inc. v. Budco, Inc.,* 481 F.Supp. 382, 384–86 (E.D.Pa.1979).

In support of its motion to reconsider, T & H has submitted evidence that the cargo it loaded on ships destined for Pennsylvania constituted a very small percentage of its total business. It also urges that it does not control or have a stake in a ship's destination, and that the destination can be changed after the ship has left port.

While it is highly questionable whether I should consider this belatedly submitted material at all, such additional information would not convince me that my ruling was incorrect. As I have already discussed, the relevant inquiry is whether defendant has the requisite minimum contacts with the forum. If a defendant's conduct is such that it should reasonably anticipate being sued in the forum state, it does not matter whether defendant's forum-related activities constitute a substantial or insubstantial part of its total business. T & H has cited, and my research has disclosed, no authority suggesting that a defendant whose contacts would otherwise satisfy the constitutional minimum could avoid being subject to a forum's jurisdiction simply because the defendant had engaged in more significant activities elsewhere.

I am also not convinced that T & H's lack of control over or stake in cargo destination outweighs the factors supporting exercise of personal jurisdiction. I recognize

that the deliberateness of a nonresident defendant's forum contacts and the benefits which the defendant derived from those contacts are, according to the Third Circuit, important factors to consider in determining whether personal jurisdiction exists. The court in *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 285–86 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981), after concluding that personal jurisdiction could not be based upon the mere possibility that the ship which the Japanese defendant had converted to an automobile carrier would travel to the forum state, noted that the defendant had no control over or direct interest in where the ship would sail. The court further stated that the increase in demand for defendant's services which might result from the ship's ability to sail to the forum state was too attenuated a benefit to support jurisdiction. *Id.* *See also Max Daetwyler Corp. v. Meyer,* 762 F.2d 290, 298–300 (3d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985).

In my view, this case is distinguishable from *DeJames* and *Max Daetwyler* on the ground that T & H specifically knew, on this and other occasions, that it was loading cargo to be discharged in Pennsylvania. T & H should thus reasonably have expected that negligent conduct could result in its being haled into a Pennsylvania court. I conclude that T & H's knowing contacts with Pennsylvania provide an adequate basis for personal jurisdiction. *See, e.g., Raffaele v. Compagnie Generale Maritime,* 707 F.2d 395, 397–98 (9th Cir.1983). *But see Dommel's Hotel, Inc. v. East West Helicopter, Inc.,* 580 F.Supp. 15 (E.D.Pa. 1984). I will therefore deny the motion for reconsideration.

■ T & H has requested that I certify the personal jurisdiction question for immediate appeal under 28 U.S.C. § 1292(b), which provides:

---

connection with Pennsylvania was its preparation of a bill of lading for a cargo which caused injury to longshoremen unloading it in Pennsylvania. The court, noting that defendant did not

know the cargo's destination, held that defendant could not reasonably have anticipated being sued in Pennsylvania. *Ward,* 437 F.Supp. at 943.

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Although I recognize that this is a close case, I do not believe certification is appropriate. My ruling on the personal jurisdiction issue was based on a fact-specific inquiry, and T & H challenges my application of established legal principles to these specific facts. I have serious reservations as to how far-reaching the consequences of a right or wrong decision in this case may be. I certainly cannot characterize the question whether I have given the proper weight to T & H's forum contacts as a "controlling question of law" within the meaning of § 1292(b). *See A. Olinick & Sons v. Dempster Brothers, Inc.*, 365 F.2d 439, 443 (2d Cir.1966).

T & H has also not satisfied me that an immediate appeal "may materially advance the ultimate termination of the litigation." Other defendants remain in this case and the case will have to proceed whether or not T & H is dismissed as a party. The only potential savings of time and expense from a successful appeal by T & H at this stage would be to the benefit of T & H. There would be no savings to any of the other parties.

Moreover, the parties opposing T & H's dismissal have requested further discovery on the jurisdictional issue if the motion for certification is granted. The potential savings in time and expense, even to T & H, should its appeal succeed do not outweigh the problems, including delay and the possibility of multiple appeals, inherent in permitting an interlocutory appeal. As the Third Circuit has cautioned, § 1292(b) is to be reserved for "exceptional cases." *Milbert v. Bison Laboratories*, 260 F.2d 431, 433 (3d Cir.1958). This is not such a case, and I will not transfer to the court of appeals a matter which is presently my responsibility to resolve.

### APPENDIX A

| Vessel | Date | Total Tonnage Loaded by Tees & Hartlepool | Total Loaded by Tees & Hartlepool for Philadelphia |
|---|---|---|---|
| TEMURA | 3/30/82 | 2,262 | 821 |
| AGIOS MATHIOS | 4/23/82 | 425 | 148 |
| TESABA | 5/17/82 | 661 | 127 |
| SCOL RESIDENT | 6/25/82 | 926 | 309 |
| TEMURA | 7/16/82 | 382 | 92 |
| SCOL RESIDENT | 8/16/82 | 1,304 | 88 |
| TEMURA | 10/1/82 | 638 | 120 |
| TESABA | 11/19/82 | 835 | 330 |
| SCOL RESIDENT | 12/22/82 | 628 | 48 |
| TEMURA | 10/19/83 | 590 | 134 |
| TEMURA | 2/5/83 | 375 | 146 |
| TESABA | 11/24/83 | 597 | 43 |
| VITENA | 12/21/83 | 13,676 | 10,060 |
| WINDRAIDER | 5/11/83 | 2,518 | 1,134 |
| SCOL RESIDENT | 7/7/83 | 1,025 | 36 |
| SCOL RESIDENT | 9/5/83 | 164 | 34 |
| TESABA | 1/31/84 | 1,101 | 49 |
| KATANIA | 3/6/84 | 911 | 22 |
| ICELAND | 3/30/84 | 1,064 | 1,019 |
| SCOL TRADE | 8/9/84 | 772 | 38 |