**CSX TRANSPORTATION, INC., Plaintiff,**

v.

**PREUSSAG INTERNATIONAL STEEL CORPORATION, et al., Defendants.**

No. CIV.A. 01–D–1092–E.

United States District Court, M.D. Alabama, Eastern Division.

April 23, 2002.

---

Morris Wade Richardson, Jacquelyn A. Gonzales, Melanie K. Dotson, Lange, Simpson, Robinson & Somerville, Birmingham, for CSX Transportation, Inc., plaintiffs.

James B. Carlson, Stephen R. Geisler, Sirote & Permutt, P.C., Birmingham, C. Gordon Starling, Jr., Gelpi Sullivan Carroll, New Orleans, John D. Gleissner, Rogers & Associates, Birmingham, for Preussag International Steel Corp., Stevedore's, Inc., Intraha Shipping Inc., defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is a Motion To Dismiss which was filed by Defendant Stevedores, Inc. ("Stevedores") on January 28, 2002. (Doc. No. 22.) In its Motion, Defendant challenges the court's exercise of personal jurisdiction in the present matter. Plaintiff CSX Transportation, Inc. ("CSX") filed a Response to said Motion on February 1.3 (Doc. No. 27), and, after the court permitted limited discovery on the issue, CSX filed a Supplemental Response on March 15. (Doc. No. 31.) Stevedores filed a Reply on March 22. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion is due to be denied.

## I. FACTS

Plaintiff filed the present diversity action under various contract and tort theories after one of its cargo trains derailed shortly before reaching its destination of Auburn, Alabama. The alleged cause of the derailment was related to the "improper loading, fastening, stowing and/or securing of ... steel coils in and onto Plaintiff's" rail cars. (Compl.¶ 14.) At the time of the derailment, Plaintiff was transporting the cargo of steel coils on behalf of

Defendant Preussag International Steel Corporation ("Preussag"). In addition to Preussag, the present action also seeks legal remedies from Defendant Stevedores, the corporation responsible for loading the cargo in question, and from Defendant Intraha Shipping, Inc., the corporation serving as the intermediary between Stevedores and Preussag. (*Id.* at 8–14.) None of the parties are Alabama citizens. Indeed, arguing that Alabama's interests are minimal, Stevedores has filed the present Motion asserting that the court's exercise of jurisdiction would exceed the limits inherent in the Due Process Clause.

CSX and Stevedores have stipulated to the following series of facts in support of their competing arguments as to the propriety of the court's exercise of jurisdiction. (Doc. No. 39.) For many years, Stevedores has engaged in the business of unloading cargo from ships in the Port of New Orleans and then loading such cargo onto trains. (*Id.* at 1–2.) Prior to accepting a particular assignment, Stevedores receives documentation detailing the cargo's destination and its means of transport. (*Id.* at 4.) Stevedores does not decline work on the basis of this information; rather it accepts the work in accordance with the various different laws that might apply. (*Id.* at 3.) Recognizing that improper workmanship could lead to tort liability, Stevedores has procured liability insurance whose coverage applies to defense of claims in Alabama. (*Id.* at 6–7.) Indeed, when Stevedores agreed to load cargo onto Plaintiff's Alabama-bound train, it did so knowing that the work would involve neither the first nor the last cargo it handled that would pass through Alabama. (*Id.* at 2–4.)

Nonetheless, Stevedores points out that it is a Louisiana corporation registered to conduct business in New Orleans. (Doc. No. 24 at ¶ 1.) It owns no property in Alabama, has no agents in Alabama, and did no work in Alabama insofar as the present accident is concerned. (*Id.* at 2–4.) Moreover, Stevedores did not contract with any Alabama citizen in the underlying actions of the present lawsuit. (*Id.* at 5.) Indeed, all the work and the negotiating leading up to that work took place in the State of Louisiana. (*Id.* at 6.) Based on the foregoing facts, the court must determine whether Stevedores' awareness that "if it failed to perform its work properly, it could be sued by those who suffered injury or damage," in conjunction with its awareness that the cargo was destined for Alabama, constitutes a sufficient nexus with the State of Alabama so as to require Stevedores to defend itself in the present forum. For reasons to be discussed, the court answers the question in the affirmative.

## II. DISCUSSION

The court's power over one's person derives from positive law and constitutional law. The Alabama long-arm statute authorizes personal jurisdiction to the fullest extent permitted by the United States Constitution. *See Martin v. Robbins,* 628 So.2d 614, 617 (Ala.1993). Accordingly, CSX's burden of establishing a prima facie case of jurisdiction is satisfied to the extent that it demonstrates that the court's exercise of jurisdiction would not offend due process.[1] The Due Process Clause

1. When no evidentiary hearing on a motion to dismiss is conducted, a plaintiff must establish a prima facie case of personal jurisdiction over a non-resident defendant. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990). A prima facie case is established if the evidence presented is sufficient to withstand a motion for judgment as a matter of law. *Id.* In considering the motion, the court construes the uncontroverted allegations in the complaint as true, and, where the parties' affidavits conflict, the court makes reasonable inferences in favor of the plaintiff. *Id.*

protects one's liberty interests by shielding the individual from binding judgments in a forum with which it has established no meaningful contacts, ties or relations.[2] Jurisdiction may be exercised over a defendant only where that Defendant has purposefully established minimum contacts within the forum state, and where the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

### A. Minimum Contacts

■ Stevedores' only contacts with Alabama is the occasional passage of cargo it loads onto trains. The Eleventh Circuit follows a three-part test in analyzing whether such contacts with a given forum are sufficient to permit the assertion of jurisdiction:

First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve "some act whereby the defendant purposely avails itself of the privilege of conducting activities within the forum . . ., thus invoking the bene-

fits and protections of its laws." Third, the defendant's contacts with the forum must be "such that [the defendant] could reasonably anticipate being haled into court there."

*Vermeulen v. Renault U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir.1993) (internal citations omitted). It is undisputed that Stevedores loaded onto the CSX train the particular cargo which gave rise to the present cause of action. A more difficult question is whether handling such cargo with the knowledge that it will find its way into Alabama constitutes purposeful availment of the forum so as to invoke the benefits of Alabama law. Closely related to this discussion is whether Stevedores could have reasonably anticipated a lawsuit in Alabama on the basis of such contacts.

Courts have addressed these issues in cases involving the stevedore industry to conflicting results. *Compare, e.g., Logwood v. Apollo Marine Specialties,* No. 89–4785 Section "N", 1992 WL 124812, 1992 U.S. Dist. LEXIS 7972 (E.D. La. June 4, 1992) (asserting jurisdiction over foreign stevedore) *with Couch v. Cro–Marine Transp.,* 769 F.Supp. 285 (C.D.Ill. 1991) (same).[3] To a large extent, the ful-

---

**2.** The nature and quality of the requisite contacts varies depending on whether the type of jurisdiction being asserted is general or specific. *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1291 (11th Cir.2000). General jurisdiction exists whenever the defendant's connection with the forum state is "continuous and systematic"-there need be no nexus between the forum and the litigation. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). On the other hand, a court can assert specific jurisdiction over a person with a more attenuated connection to the forum when there is a sufficient nexus between the forum and the matter at issue. *Id.* at 414, n. 8, 104 S.Ct. 1868. CSX rightly does not contend that Stevedores bears any systematic nexus with Alabama, so the court addresses only the issue of specific jurisdiction.

**3.** Of all the courts to address the issues raised in the present matter, approximately as many courts have found jurisdiction to be appropriate, *see Fullington v. Union Pacific Fruit Express Co.,* No. 88–2453–S, 1989 WL 21039 (D.Kan.1989); *Muller v. Temura Shipping Co.,* 629 F.Supp. 1024 (E.D.Pa.1986); *Raffaele v. Compagnie Generale Maritime, S.A.,* 707 F.2d 395 (9th Cir.1983), as there have been courts finding jurisdiction to be lacking. *See Eggear v. Shibusawa Warehouse Co.,* No. 00–CV–4636, 2001 WL 267881, 2001 U.S. Dist. LEXIS 2868 (E.D.Pa. Mar. 19, 2001) (refusing to assert jurisdiction over foreign stevedore); *Haley v. Champion Int'l Corp.,* No. 99–2256–JWL, 2000 WL 1472880 (D.Kan. Apr.21, 2000); *In re Vicknair v. Sours Grain Co., Inc.,* No. 96–3144, 1998 WL 43139 (E.D.La. Jan.30, 1998); *Fireman's Fund Ins. Co. v. Inchcape Shipping Servs., Inc.,* No C–95–1572, 1996 WL 209614 (N.D.Cal. Apr.19, 1996).

crum upon which the aforementioned stevedore cases turn is the response the respective courts took to the splintered opinions in *Asahi Metal Industries Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the most recent Supreme Court decision to address personal jurisdiction in the present context.[4]

In the *Asahi* case, the victim of a motorcycle accident in California filed a tort claim against the Taiwanese manufacturer of the bike's tire tube, claiming the tube's alleged defect proximately caused plaintiff's damages. *Id.* at 105–06, 107 S.Ct. 1026. The tube manufacturer sought to indemnify the Japanese manufacturer of the tube's valve stem, even though the Japanese company had no contacts with California beyond the "awareness that some of the components [it delivered to the Taiwanese company] would eventually find their way to California." *Id.* at 108, 107 S.Ct. 1026. Shortly after the litigation commenced, the plaintiff settled and dismissed all his claims. *Id.* at 106, 107 S.Ct. 1026. Accordingly, as the question of personal jurisdiction over the Japanese company worked its way up the appellate system, the only remaining substantive claim was the indemnification claim between two foreign companies. *Id.*

Although the Justices unanimously agreed that the exercise of jurisdiction "would offend traditional notions of fair play and substantial justice" given the burden on the Japanese defendant and the minimal interest of California in the indemnification dispute,[5] no more than four Justices could agree on the appropriate framework from which to examine whether minimum contacts exist. *Id.* at 113, 107 S.Ct. 1026. (internal quotations omitted). While the court has previously discussed at length the three differing opinions in *Asahi, see Marbury v. Am. Truetzschler,* 111 F.Supp.2d 1281 (M.D.Ala.2000) (DeMent, J.); *Huey v. Am. Truetzschler,* 47 F.Supp.2d 1342 (M.D.Ala.1999) (Thompson, J.), a brief discussion of the disparate theories offered therein is helpful to provide a lens through which to view the issues before the court.

Justice O'Connor observed that in the lower courts there existed two alternative interpretations of the Court's previous decision in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and set out, ironically enough, to dispel the confusion below. *Asahi,* 480 U.S. at 110–11, 107 S.Ct. 1026. As to the issue of purposeful availment, the *World–Wide Volkswagen* Court had observed that, while foreseeability that a product might enter a particular market is not sufficient by itself to demonstrate that a defendant has purposefully availed itself of the benefits of that forum, neither is such foreseeability "wholly irrelevant" to the analysis. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. Rather, if

---

4. Although *Asahi* and the stream of commerce theory discussed therein arose in the context of a products liability action, the court finds that *Asahi*'s discussions readily apply to allegations of negligently and wantonly performed services. The obligations imposed on a manufacturer under strict liability require that the steps taken to design and manufacture a product comply with certain standards of safety; similarly, tort law requires that Stevedore's services have been carried out with due care. The court sees no reason to distinguish those defendants whose products enter the stream of commerce from those defendants whose service enter the stream of commerce when a breach of the respective duties could equally cause harm. *See Couch,* 769 F.Supp. at 286. The minimum contacts analysis merely asks whether a given defendant could have reasonably anticipated that its duty would extend to a given forum.

5. The "fair play and substantial justice" analysis will be discussed *infra.*

the sale of a product "is not simply an isolated occurrence, but arises from the efforts of a manufacturer or distributor to serve, directly or indirectly, the market for its products in other States," the Due Process Clause will not serve as a shield from liability in the event that the allegedly defective product causes injury in those States. *Id.* The *World–Wide Volkswagen* Court further announced that the exercise of personal jurisdiction is appropriate "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."[6] *Id.* at 297–98, 100 S.Ct. 559.

Justice O'Connor cautioned against a broad interpretation of the "stream of commerce" theory espoused by the *World–Wide Volkswagen* Court, insisting that the language be read in light of the general proposition that a finding of minimum contacts requires "an action of the defendant purposefully directed toward the forum state." *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026 (internal quotations omitted). In other words, in addition to placing a product in the stream of commerce, a defendant must have acted so as to evince an intention of serving the particular forum in question. *Id.* Justice O'Connor provided a non-exhaustive list of examples which might constitute intentional forum-related activity, such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

Justice Stevens was critical of Justice O'Connor's analytic assumption that a clear line can be drawn between "mere awareness" and "purposeful availment." *Id.* at 122, 107 S.Ct. 1026 (Stevens, J., concurring). Certainly, he argued, there must come a point at which the volume or the value of sales knowingly garnered from a particular market should rise to the level of minimum contacts, regardless of whether a defendant actively sought out the market in question. *Id.* In other words, the decision to continue to pursue a particular business model whose success depends in part on the market where a product eventually finds itself can sufficiently constitute "purposeful availment" according to Justice Stevens.

Justice Brennan would stretch this theory even further, arguing that a defendant's awareness that the stream of commerce will carry its product into the relevant forum is sufficient for these purposes. *Id.* at 117, 107 S.Ct. 1026 (Brennan, J., concurring). Justice Brennan emphasized that the existence or non-existence of direct contact with a particular state has no bearing on the indirect benefits conferred upon a defendant by virtue of the laws within that state that regulate commercial activity. *Id.* Brennan insisted that Justice O'Connor's viewpoint represented a marked retreat from *World–Wide Volkswagen* to the extent that the Court's conclusion in that case rested on a distinction between products brought to a forum by the stream of commerce and those whose entry into a forum resulted merely from a consumer's whim.[7] *Id.* at 120, 107 S.Ct.

---

6. The *World–Wide Volkswagen* Court went on to hold that the defendants, automobile distributors in New York, could not be subjected to a lawsuit in Oklahoma even though one of the vehicles they sold had an accident in that forum. *World–Wide Volkswagen,* 444 U.S. at 298–99, 100 S.Ct. 559. The court reasoned that, even though the defendants could reasonably foresee that one of their products might eventually find itself in Oklahoma, the benefits derived in relation to this foreseeability were far too tenuous to overcome Due Process concerns. *Id.*

7. It is worth pointing out that the *World–Wide Volkswagen* Court gave favorable treatment to its prior pronouncement as to the "increasing nationalization of commerce" that had "only

1026 (Brennan, J., concurring). Justice Brennan argued that *World–Wide Volkswagen* should be read to preclude jurisdiction in the face of isolated, fortuitous contacts, but not when a defendant knowingly derived economic benefit from the sale of its products in the forum. *Id.* at 120 n. 3 & 121, 107 S.Ct. 1026 (Brennan, J., concurring).

In the time since the *Asahi* decision was handed down, the Eleventh Circuit has provided no clear guidance as to the appropriate weight to be accorded to the competing stream of commerce theories. The panel in *Vermeulen* observed in a footnote that other courts have continued to apply the theory as elucidated in *World–Wide Volkswagen* since no Supreme Court majority opinion has superseded its applicability, but it declined to conclude which standard controlled since jurisdiction in *Vermeulen* was appropriate even under O'Connor's "stream of commerce plus" analysis. *Vermeulen*, 985 F.2d at 1548 n. 17. This conclusion is significant for present purposes inasmuch as the Fifth Circuit's decision to continue to apply *World–Wide Volkswagen* was instrumental in finding jurisdiction to be appropriate over a stevedore defendant in *Logwood*, 1992 WL 124812, 1992 U.S. Dist. LEXIS 7972 at *6–7 (citing *Irving v. Owens–Corning Fiberglas Corp.*, 864 F.2d 383 (5th Cir.1989)). On the other hand, the *Eggear* court refused to exercise jurisdiction over a stevedore defendant, thus deviating from its prior decision in *Irby*, in part because of Justice O'Connor's intervening opinion in *Asahi*. *Eggear*, 2001 WL 267881, 2001 U.S. Dist. LEXIS 2868 at *8–9. Nonetheless, to complicate matters further, the *Couch* court adopted an approach correlative to that applied in *Vermeulen*, when it refused to exercise jurisdiction over a stevedore upon concluding that its contacts with Illinois did not satisfy even Justice Brennan's test. *Couch*, 769 F.Supp. at 286. Thus does the court strive for coherency in an area rife with opacity.

At first glance, it seems apparent that Stevedores would not satisfy Justice O'Connor's more stringent test since, beyond the fact that it knew the cargo in question was destined for Alabama, Stevedores engaged in no other direct conduct with respect to the forum. The court wishes to avoid an unduly formalistic analysis, however, and emphasizes that the nature of Stevedores' business deserves discussion before such a conclusion is drawn. Whereas the manufacturer of a product that has entered the stream of commerce might be quite surprised to learn that its goods have found themselves in a particular market, Stevedores knew, from the moment that it agreed to load the cargo in question, that the CSX locomotive was destined for Alabama. It was not merely foreseeable that the cargo would find its way to the particular forum; it was a known fact. As such, Stevedores should have been aware that the failure to properly load the cargo could have ramifications at any point between New Orleans and Auburn. *See Fullington*, 1989 WL 21039 at *2.

Under most circumstances, a manufacturer who knew with certainty that its product would arrive in a particular forum knew so because it had purposefully directed the product to that forum. Accordingly, the "additional conduct" factor in

---

accelerated in the generation since" that pronouncement was made. *World–Wide Volkswagen*, 444 U.S. at 293, 100 S.Ct. 559 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222–23, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). In the generation since *McGee*'s enhanced viability was recognized, words like "globalization" and the "world wide web" have entered the American vocabulary, symptomatic of the further erosion of the emphasis courts should place on the transcontinental aspect of business activity.

Justice O'Connor's test would have been met. Of course, in the present scenario, that the cargo ended up in Alabama, as opposed to, say, Arkansas, was not within Stevedores' control; in terms of the transiency of its handiwork, Stevedores was but a passive player in the stream of commerce. Moreover, unlike a manufacturer seeking to capture a particular market, there is nothing peculiar about a train destined for Alabama that influences Stevedores' decision to accept a particular assignment. As mentioned above, Stevedores generally assumes work without regard to the destination. In other words, not only does Stevedores exercise no control over the path traversed by the cargo it loads, neither does it care.

This fortuitous aspect of a stevedore's ties to a particular forum was the central reason the *Couch* court found jurisdiction to be lacking under not only Justice Stevens' opinion in *Asahi*, but also that espoused by Justice Brennan. *Couch*, at 286. The court respectfully disagrees with the analysis in that opinion. The stevedore industry exists solely by virtue of the stream of interstate commerce; but for the demand for steel coils in Auburn, Alabama, CSX would not have hauled the coils, and neither would Stevedores have loaded the train. As goods from around the world enter our Nation's ports, inland demand can be satisfied only by transportation of those goods through the channels which sustain the stream of commerce. The stevedore industry occupies a crucial niche in that stream by facilitating the links between various transportation mechanisms. Unlike a manufacturer of goods who may choose the forum toward which to direct its products, the establishment of a business in the stevedore industry represents a choice to provide services which potentially could effect citizens in a number of different fora.

In effect, Stevedores has purposefully directed its services into the stream of interstate commerce generally. The currents and eddies comprising this stream are sustained and propelled by the laws of the several States that serve as a catalyst for the free flow of goods across the continent. The stevedore industry does more than derive an indirect benefit from such laws-it directly capitalizes on the economic bounty which the laws facilitate. The revenues generated within this industry represent a share of the profits derived specifically from the transportation of goods from one forum to the next. In exchange for its piece of the proverbial pie, Stevedores provided a service to CSX, implicit in which was a duty of care.[8]

Indeed, Stevedores undertook the sole responsibility to secure steel coils specifically so that the coils would arrive in Alabama safely intact. Absent intervening causes, any injury to person or property within Alabama which may have resulted from slipshod fastening of the cargo could have been avoided only by Stevedores at the time of the loading. Just as the laws of Alabama aim to protect the safe passage

---

**8.** This is not to say that any local business providing a service to entities transporting goods across state lines can be subjected to jurisdiction in a foreign state simply by virtue of providing that service. For instance, an auto shop that services tractor trailers might have a defense that an accident resulting from a negligent transmission service was foreseeable generally, but not with regards to the forum in which the accident occurred. Errant repair work might remain unnoticed for thousands of miles, and it is not reasonably foreseeable for a Louisiana mechanic to suspect that a semi-truck might suffer an accident two months later in the Pacific Northwest. *Cf. World–Wide Volkswagen*, 444 U.S. at 296, 100 S.Ct. 559 (refusing to adopt a rule under which "[e]very seller of chattels would in effect appoint his chattel his agent for service of process [and his] amenability to suit would travel with the chattel").

of goods within its borders, reciprocity should permit Alabama to secure judgments against those entities which threaten the safety of Alabama citizens. *See World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559 (holding that when defendant's activities constitute a concerted effort to profit from the market in a particular forum, jurisdiction is not unreasonable in that forum when the defendant's activities have "been the source of injury" to people within that forum).

It would be an odd interpretation of the Due Process Clause to permit a defendant's behavior to pose a threat to citizens nationwide, but limit its amenability to suit to a single forum simply because the defendant did not favor one particular forum over the other. Justice Stevens spoke not only of volume, but also the value and hazardous character of the threat posed by a defendant's conduct. *Asahi,* 480 U.S. at 122, 107 S.Ct. 1026 (Stevens, J., concurring). Train derailments can pose significant threats to the well-being of neighboring communities depending on the vicinity of the derailment and the cargo carried on the train. The court finds that it would be unreasonable to tie the hands of the several States when they collectively face such threats on a regular basis.

The commercial service Stevedores provides is interstate by nature. Stevedores actively "seeks work from various sources and does not decline work based upon the origin or destination of the cargo." (Doc. No. 39 ¶ 3.) Stevedores should not be excused simply because it does not concern itself with which particular State should bear the risks inherent in its craft.[9] Its

choice to contract its services to national carriers constitutes purposeful availment of the benefits and protections of the laws of the States affected by the services. The court finds that Stevedores, in choosing to load the coils onto the Alabama-bound CSX train, purposefully availed itself of the laws the State of Alabama.

Ample discussion has been given to the reasonableness with which Stevedores might anticipate being haled into court in Alabama such that the court cannot surmise any element of surprise on Stevedores' part. It has acknowledged that it was "fully aware that [its] actions or omissions would have a substantial effect in" Alabama. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 259 (11th Cir.1996). Moreover, it has provided services to Alabama-bound trains before and intends to do so in the future. (*Id.* at 2.) Finally, it sought to insure itself in Alabama, presumably to limit its liability in these very circumstances. In short, the court concludes that not only could Stevedores have reasonably anticipated being haled into a foreign court one day, it has arguably already anticipated as much. Accordingly, CSX has satisfied its burden of demonstrating that Stevedores has minimum contacts with Alabama.

## B. Fair Play and Substantial Justice

■ Even though the court has found there to be minimum contacts, personal jurisdiction nonetheless will not be appropriate should its exercise offend "traditional notions of fair play and substantial justice." *Asahi,* 480 U.S. at 113, 107 S.Ct.

---

9. The court does not mean to fault Stevedores for its open policy as to work assignments. Any reason for Stevedores to act otherwise is effectively obviated since its insurance policy extends to claims in all venues. Nonetheless, the policy itself supports the conclusion that Stevedores actively seeks to conduct business on a national scale, with each assignment a specific embodiment of this general business plan. *Cf. World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559 (observing that potential defendants are entitled to clear notice that they are subject to suit so that they can arrange conduct accordingly "by procuring insurance").

1026 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). This determination is essentially a reasonableness test in which the court considers "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Id.* The court's analysis also considers "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental social policies." *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559.

Although none of the parties to the present action are Alabama residents, Alabama nonetheless has "a compelling interest in protecting persons [and property] within its borders from" the hazards that accompany train derailments. *Vermeulen*, 985 F.2d at 1551. Although the only alleged damage in the present circumstances concerns CSX's train, this fact does not negate the manifest interest Alabama has in deterring future derailments in which its citizens are not so fortunate. Moreover, even in the absence of direct injury to an Alabama resident, a train derailment creates a bottleneck in the free flow of commerce thus disrupting the lives of many an Alabamian. Absent compelling circumstances, the State of Alabama should not be deprived of the authority to resolve such matters that have taken place within its borders.

Because the four parties to the present action each call a different State their home, it appears that only one other State would be a permissible forum in which to join all the parties, namely Louisiana. The availability of an alternative forum undercuts the argument that Alabama is a forum of necessity from CSX's standpoint, but because a plaintiff is to be viewed as master of the lawsuit, Stevedores must demonstrate that the burden it bears by litigating in Alabama is sufficiently weighty. It has made passing reference to documents and witnesses within Louisiana who eventually must be hauled to Alabama, but it disregards the witnesses and evidence in Alabama that would need to be transported to Louisiana were the suit originally filed in that forum. Notably, none of Defendants have sought a transfer of venue pursuant to 28 U.S.C. § 1404, so the court suspects that the burdens of Louisiana litigation are relatively comparable to Alabama litigation. At the very least, the court concludes that traversing the several-hundred mile distance between New Orleans and Montgomery, Alabama is not the type of burden that modern courts have found inconsistent with fair play.

Moreover, concerns of judicial economy within the interstate system favor a trial in a single forum. The dismissal of Stevedores as a party to the present action "would not end the litigation, but would merely splinter it." *Vermeulen*, 985 F.2d at 1552. Certainly this problem could be avoided were the court to transfer the matter to Louisiana, but as the parties have not briefed the issue, it would be premature for the court to make a determination as to the most convenient forum. Based on the record presently before the court, the court is satisfied that Alabama's interest in ensuring safe travel within its borders, when viewed in conjunction with the judicial system's interest in efficient adjudication of such matters, more than outweighs any slight burden Stevedores must overcome upon litigating in Alabama. In short, it is "not unreasonable to require [Stevedores] to submit to the burdens of litigation" in Alabama. *Burger King Corp.*, 471 U.S. at 476, 105 S.Ct. 2174.

### III. ORDER

It is CONSIDERED and ORDERED that Defendant Stevedores, Inc.'s Motion

To Dismiss be and the same is hereby DENIED.